# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC SHELDON MORSE,<br><br>                 Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                 Defendant. | Case No. 1:18-cv-00890-EPG<br><br>**FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

      This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for Disability Insurance Benefits and Supplemental Security Income. The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c) with any appeal to the Court of Appeals for the Ninth Circuit. (ECF Nos. 7, 8).

\\\

\\\

1

## A. ALJ's Treatment of Plaintiff's Testimony about His Symptoms

Plaintiff first claims that the Administrative Law Judge ("ALJ") erred in failing to provide legally sufficient reasons for discounting the symptom testimony of Plaintiff.

The Ninth Circuit has provided the following guidance regarding Plaintiff's symptom testimony:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Bunnell v. Sullivan,* 947 F.2d 341, 344 (9th Cir.1991) (en banc) (internal quotation marks omitted). The claimant, however, "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater,* 80 F.3d 1273, 1282 (9th Cir.1996). "Thus, the ALJ may not reject subjective symptom testimony ... simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged." *Id.*; *see also Reddick,* 157 F.3d at 722 ("[T]he Commissioner may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.").
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen,* 80 F.3d at 1281; *see also Robbins,* 466 F.3d at 883 ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each.").

*Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-1036 (9th Cir. 2007). Here, The ALJ found that Plaintiff presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged. Moreover, there was no evidence of malingering. Thus, this Court evaluates whether the ALJ's reasons for rejecting the Plaintiff's testimony about the severity of his symptoms were sufficiently specific, clear and convincing.

The ALJ gave the following reasons for rejecting Plaintiff's symptom testimony, specifically Plaintiff's testimony about his need to go to the bathroom approximately 15-20 times a day for 10 minutes at a time:

> The claimant does have a history of severe ulcerative colitis and is now status-post-total colectomy with an ileoanal pouch, which was reconstructed in 1994 (Ex. 4F/32-33). Although he reports diarrhea, rectal pain, and joint pain related to this condition, it is significant to note that after he recuperated from surgery, he obtained a mechanic's certificate and was able to work full time despite his symptoms. (Ex. 2F/4, 2E, 4E, and 6D).
>
> In addition, the claimant's testimony concerning the frequency of diarrhea is inconsistent with the record in that his weight has remained relatively stable over time and there were no signs of malnutrition (Exs. 6F/12, 6F/10, 6F/6, 6F/2, 5F/2, 5F/13, 3F/6, and 1F/12). In fact, Dr. Wagner found reasonable stores of subcutaneous fat on the abdomen (Ex. 3F/6). Nor did his doctors note significant fluid or electrolyte abnormalities, as one might expect with frequent and severe bouts of diarrhea.
>
> The claimant also alleged ulcerative-colitis-related arthropathy with joint pain. However, physical examination findings, as discussed above, were generally unremarkable. Rather he had normal range of motion and normal strength and was able to move about without apparent difficulty. Laboratory testing for C Reactive Protein and Westergren Sedimentation Rate were negative and did not support the diagnosis.
>
> The claimant has had a positive response to medication. He reported benefit from Tramadol for pain without debilitating side effects (Ex. 1F/10, 6F/6, 6F/8, 5F/5, 7F/18, 7F/22), but he did not find stronger opioids to be of help (Ex. 6F/12).
>
> The claimant's daily activities suggest the claimant retains the capacity for a significant range of activities. The claimant reported a typical day included getting up, getting coffee, getting on the computer, watching television, building model cars, watching more television, having lunch, and then repeating the same activities (Ex. 2F/6). He could do chores such as vacuuming, washing dishes, cooking, sweeping, washing clothes, and yardwork (Exch. 2F/6). His hobbies included playing the guitar and building model cars (Ex. 2F/6). He was able to drive a car, shop in stores for food and clothing, and count change, but he did not handle bank accounts or pay bills due to his financial status (Ex. 3E/7). Although he reported that he does not regularly spend time with others, he admitted to

having a couple of close friends (Ex. 3E/9; 2F/7). He also reported that he took care of his son and provided for him as best he could.

(A.R. 24).

Regarding the ALJ's first reason, "that after he recuperated from surgery, he obtained a mechanic's certificate and was able to work full time despite his symptoms," it is true that Plaintiff worked full-time for many years following his surgery from the ulcerative colitis. However, the ALJ does not address Plaintiff's claim that his symptoms have worsened over time. The ALJ addressed this issue at the hearing as follows:

> Q: Well, okay. I see you have a long—I see '95. I see you have a long history of work. How were you able to work for so many years?
>
> A: I tried just to do the best I could, because I would always have a lot of hardship going through work, going to the bathroom. I've been fired for going to the bathroom. And I knew I was going to have to have help one day, because it was just so hard for me to do it all the time, to go to the bathroom and just keep trying to work. And I—then I kind of—as I got older, I got bigger. And then I had it when I was a kid, and I got—my pouch stayed the same, but I got bigger, and I just keep constantly going. And when I go, the more I go to the bathroom, the more it makes it worse, and then the pain just is—I got to stop.
>
> . . .
>
> Q: And how could you do that job at Jiffy Lube . . . if you have to go to the bathroom . . . so much?
>
> A: I would go and come back. And then they would get—I would do it, but they would get mad at me and, why do you go to the bathroom so much? And then some places would let me go, and I would just try to do the best I could. But it's—I got to—it's kind of a hard job, but you got to do certain things and be there. And I'm always not there, back and forth, back and forth.

(A.R. 41-42). The ALJ does not address Plaintiff's explanation. Given this explanation—including that Mr. Morse was previously fired for jobs because of his bathroom use, and that the condition worsened over time because the pouch did not adjust to Plaintiff's growing size—the fact that Plaintiff worked many years since his initial surgery is not a clear and convincing reason to discredit Plaintiff's symptom testimony.

The ALJ's second reason relates to a lack of symptoms of diarrhea and weight loss. But Plaintiff's alleged bathroom use was not due to diarrhea. As Plaintiff described extensively at the hearing, his frequent and lengthy bathroom use is due to having a pouch that collects waste

4

products, which needs to be emptied frequently. (A.R. 43-44). Although he also testified that illnesses exacerbate the problem and are "constant liquid," he did not allege that he has constant diarrhea. Thus, the lack of physical symptoms related to constant diarrhea is not on point and is not a clear and convincing reason for discrediting Plaintiff's testimony.

The ALJ's next reason concerned normal range of motion, strength, C Reactive Protein and Westergren Sedimentation Rate. This reason concerns the allegation of joint pain, rather than bathroom issues. Setting aside whether those tests adequately disprove allegations of pain, they do not concern Plaintiff's allegation of frequent and lengthy bathroom breaks. The same is true of the ALJ's reason regarding a positive response to pain medication. Although the parties dispute the extent that Tramadol alleviated the pain, it is not relevant to bathroom use. No one contended that Tramadol would affect the frequency or length of Plaintiff's bathroom use.

Finally, the ALJ pointed to Plaintiff's daily activities including getting coffee, getting on the computer, watching television, building model cars, and having meals. The Court finds that none of these activities, individually or in the aggregate, are inconsistent with Plaintiff's allegations regarding bathroom use.

After review of these reasons, the Court finds that the ALJ did not provide legally sufficient reasons for discounting Plaintiff's symptoms regarding his frequency and length of bathroom use.

The Court now turns to whether to remand for further proceedings or award of benefits. The Ninth Circuit has provided the following tests for whether an award of benefits is appropriate:

> We subsequently distilled the *Varney* rule (sometimes referred to as the "credit-as-true" rule) into three steps. Under this procedure, we first ask whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Garrison,* 759 F.3d at 1020; *see also Moisa,* 367 F.3d at 887.
>
> Second, if the ALJ has erred, we determine whether "the record has been fully developed," *Garrison,* 759 F.3d at 1020, whether there are "outstanding issues that must be resolved before a determination of disability can be made," *Moisa,* 367 F.3d at 887, and whether further administrative proceedings would be

5

useful, *see Varney II,* 859 F.2d at 1399. Administrative proceedings are generally useful where the record "has [not] been fully developed," *Garrison,* 759 F.3d at 1020, there is a need to resolve conflicts and ambiguities, *Andrews,* 53 F.3d at 1039, or the "presentation of further evidence ... may well prove enlightening" in light of the passage of time, *Ventura,* 537 U.S. at 18, 123 S.Ct. 353. Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate.

Third, if we conclude that no outstanding issues remain and further proceedings would not be useful, we may apply our prophylactic *Varney* rule, finding the relevant testimony credible as a matter of law, *see Vasquez v. Astrue,* 572 F.3d 586, 600-01 (2008) (Hawkins, J., concurring) (describing how the *Varney* rule has been used); *Harman v. Apfel,* 211 F.3d 1172, 1178–79 (9th Cir.2000), and then determine whether the record, taken as a whole, leaves "not the slightest uncertainty as to the outcome of [the] proceeding," *Wyman–Gordon,* 394 U.S. at 766 n. 6, 89 S.Ct. 1426.

When all three elements of this *Varney* rule are satisfied, a case raises the "rare circumstances" that allow us to exercise our discretion to depart from the ordinary remand rule.

*Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1100-1102 (9th Cir. 2014) (internal citations and footnote omitted).

The Court has found that the ALJ's reasons for discounting Plaintiff's testimony regarding his symptoms are not legally sufficient. It also finds that further administrative proceedings are not necessary. The ALJ himself described at the hearing why the frequency of bathroom breaks was the most important issue because it alone was disabling due to the time off-task. (A.R. 55 ("it's not really a functional limitation in that case. It's just kind of a case where, you know, how—you know, how often would he be off task? As you know, almost any VE will say 20% is disabling, and 15-20 bathroom breaks a day would be more than 20%."). Furthermore, there is not the slightest uncertainty of the outcome once the Plaintiff's testimony regarding the frequency and length of bathroom breaks is credited as true. Accordingly, this is the rare circumstance where a remand for award of benefits is appropriate.[1]

---

[1] Plaintiff also argued that the ALJ committed legal error in rejecting the opinion of a third party without legally sufficient justification. Given the Court's holding above, it need not reach this other issue. It is worth noting, however, that the third-party opinion at issue corroborated Plaintiff's testimony regarding his bathroom use. (A.R. 293 ("[T]he Dr. said he would have a lot of problems later in life. Lots of problems, can't work, has tried many times, but because he's

**B. Conclusion**

Accordingly, the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for calculation and award of benefits, consistent with this decision.

IT IS SO ORDERED.

Dated: **August 16, 2019**

/s/ Eric P. Grosjean
UNITED STATES MAGISTRATE JUDGE

---

always in the bathroom and it hurts all the time. . . At this time as he's gotten older on a regular day he can go to the restroom bowel movement 15 to 20 times a day . . . .").